# EXHIBIT A

*Execution*

# RESTRICTIVE COVENANT AGREEMENT

**THIS RESTRICTIVE COVENANT AGREEMENT** (this "Agreement") is made and entered into as of September 26, 2023 by and between John Labrie, an individual resident of Illinois ("Covenantor"), and United Parcel Service of America, Inc., a Delaware corporation ("Purchaser"), and is effective as of the Closing Date and contingent upon the occurrence of the Closing. Purchaser and Covenantor are sometimes individually referred to herein as a "Party" and together as the "Parties."

**W I T N E S S E T H:**

**WHEREAS**, concurrently with the execution of this Agreement, Purchaser, MNX Global Parent Holdings, LLC, a Delaware limited liability company ("Seller"), and MNX Global Intermediate Holdings, Inc., a Delaware corporation (the "Company"), are entering into that certain Stock Purchase Agreement (the "Purchase Agreement"), dated as of the date hereof, pursuant to which, among other things, Seller proposes to sell to Purchaser, and Purchaser proposes to purchase from Seller all of the issued and outstanding shares of common stock of the Company, on the terms and subject to the conditions set forth in the Purchase Agreement;

**WHEREAS**, as a direct equityholder of Seller, Covenantor will receive significant valuable consideration as a result of the transactions contemplated by the Purchase Agreement;

**WHEREAS**, to adequately protect Purchaser's legitimate business interests and financial investment in the Company, including, but not limited to, Purchaser's and the Company's relationships with their employees, contractors, customers, suppliers, vendors, and agents, as well as Purchaser's and the Company's goodwill, Confidential Information (as defined below), proprietary information, and Trade Secrets (as defined below), it is essential that Covenantor enter into this Agreement;

**WHEREAS**, Covenantor acknowledges that it would be detrimental to Purchaser if Covenantor or any of Covenantor's Affiliates (as defined below) were to engage in certain prohibited activities following the Closing as more fully described herein; and

**WHEREAS**, as a material inducement for Purchaser to enter into the Purchase Agreement and consummate the transactions contemplated thereby, and acknowledging that Purchaser will justifiably rely on this inducement, the Parties acknowledge and agree that it is essential that Covenantor execute and comply with the terms of this Agreement, effective as of the Closing Date, in order to protect the legitimate business interests of Purchaser.

**NOW, THEREFORE**, in consideration of the premises and mutual promises contained herein, the Parties, intending to be legally bound, hereby agree as follows:

1. Definitions. Capitalized terms used and not otherwise defined herein have the respective meanings ascribed to such terms in the Purchase Agreement. For the purposes of this Agreement:

"Affiliate" of any Person shall mean any Person, directly or indirectly controlling, controlled by, or under common control with, such Person; provided, that, for the purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"Chosen Courts" means the state and federal courts located in the State of Delaware.

"Company Activities" means next-flight-out services, courier managed transportation services, or service parts logistics.

"Confidential Information" means any of the following non-public and confidential or proprietary information related to Company Activities or the Company, Purchaser, Purchaser Group or any of their respective Affiliates: financial, technical, sales, marketing, development and personnel information, customer lists, supplier lists, designs, product formulations, product specifications, terms of arrangements with customers, terms of arrangements with vendors or suppliers, other data or information of Purchaser or any other member of Purchaser Group (including Trade Secrets) that is valuable to the operation of Purchaser Group's business and not generally known to the public or competitors and all notes, analysis, compilations, summaries, extracts, studies, interpretations or other materials that contain, reflect or are based upon, in whole or in part, any such information, however recorded or preserved, whether written or oral and regardless of whether or not specifically marked as confidential.

"Governmental Entity" means any federal, state, local or foreign government, any political subdivision thereof, or any court, arbitrator or arbitration panel, administrative or regulatory agency, department, instrumentality, body or commission or other governmental authority or agency.

"Laws" means any statute, law, ordinance, policy, rule, regulation or other requirement of an enforceable permit, license or authorization of any Governmental Entity and all judicial interpretations thereof.

"Legal Dispute" means any action, suit, arbitration or proceeding between or among the Parties and their respective Affiliates arising in connection with any disagreement, dispute, controversy or claim arising out of or relating to this Agreement.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, trust, unincorporated organization or Governmental Entity.

"Purchaser Group" means, collectively, Purchaser, the Company and Purchaser's other direct and indirect subsidiaries.

"Term" means the period beginning on the Closing Date and ending on the second (2nd) anniversary of the Closing Date.

"Territory" means (i) the United States, (ii) Australia, (iii) France, (iv) Germany, (v) Hong Kong, (vi) Japan, (vii) Netherlands, (viii) New Zealand, (ix) Singapore, (x) South Korea, (xi) Taiwan, and (xii) United Kingdom.

"Trade Secrets" means anything that would constitute a "trade secret" under applicable Law, including, but not limited to, information with respect to the conduct or details of the business conducted by Purchaser Group, including any technical or nontechnical data, formula, pattern, compilation, program, device, method, technique, design, drawing, process, financial data, financial plan, product plan, list of actual or potential customers or suppliers or other information similar to any of the foregoing, which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other Persons who can derive economic value from its disclosure or use and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

2. Trade Secrets, Confidential Information and Noncompetition

    a. Confidential Information and Trade Secrets. Covenantor hereby agrees that neither Covenantor nor any of Covenantor's Affiliates will use any Confidential Information or Trade Secrets or disclose any Confidential Information or Trade Secrets to any Person (who is not an employee, contractor, agent, or Affiliate of Purchaser), without the prior written consent of Purchaser, which consent may be withheld in Purchaser's sole discretion. With respect to Confidential Information, the obligations of Covenantor in this Section 2.a shall continue until the end of the Term. With respect to Trade Secrets, the obligations of Covenantor in this Section 2.a shall continue for as long as the applicable information continues to constitute a Trade Secret as defined in this Agreement. The provisions of this Section 2.a will not apply to Confidential Information or Trade Secrets that otherwise become generally known in the industry or to the public through no act of Covenantor or any of Covenantor's Affiliates or any Person acting by or on Covenantor's or any of Covenantor's Affiliates' behalf, or, subject to Section 2.e, which is required to be disclosed by applicable Law. Nothing in this Agreement shall diminish the rights of Purchaser Group regarding the protection of Trade Secrets and other intellectual property pursuant to applicable Law.

    b. Noncompetition.

        (1) Acknowledgment. Covenantor acknowledges that as of the date hereof, the Company conducts, or has taken actual steps in furtherance of, the Company Activities throughout the Territory and that, to protect adequately the interest of Purchaser in the business and goodwill of Purchaser Group, it is essential that any noncompetition covenant with respect thereto cover all Company Activities and the entire Territory for the duration of the Term. Covenantor understands and agrees that the Company has expended significant time, effort, and resources to market and provide the Company Activities throughout the Territory, and to develop and protect its trade secrets and other confidential information, its relationships with current and prospective customers, vendors, suppliers, and other business relations, its goodwill associated with its business, and its investment in recruiting and training its employees throughout the Territory. Covenantor understands that the nature of the Covenantor's position gives Covenantor access to and knowledge of Confidential Information and places Covenantor in a position of trust and confidence with the Company. Covenantor understands and acknowledges that the services Covenantor provides to the Company, including intellectual and market expertise (whether related to historical or developing markets of the Company) and know-how, are unique, special, and extraordinary. Covenantor further understands and acknowledges that the Company's ability to reserve these for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure by Covenantor is likely to result in unfair or unlawful competitive activity. Covenantor believes that Covenantor has received and will receive sufficient consideration and other benefits hereunder and pursuant to the Transactions to clearly justify such restrictions which, given the education, skills and ability of Covenantor, Covenantor does not believe would prevent Covenantor from otherwise earning a living.

        (2) Trade Name. Covenantor hereby agrees that, during the Term, except on behalf of Purchaser and its Affiliates, neither Covenantor nor any of Covenantor's Affiliates will, directly or by assisting others, own, manage, operate, join, control, or participate in the ownership, management, operation, or control of any business conducted under any corporate, product, or trade name or trademark or service mark of, Purchaser Group, or name or mark similar thereto, without the prior written consent of Purchaser, which consent may be withheld in Purchaser's sole discretion.

(3) <u>Noncompetition Covenant</u>.  Covenantor hereby agrees that, during the Term, except on behalf of Purchaser and its Affiliates or as otherwise expressly stated in this Agreement, neither Covenantor nor any of Covenantor's Affiliates will, directly or by assisting others, own, manage, join, assist, or conduct Company Activities in the Territory or otherwise engage in, have an equity or profit interest in, loan money to or render services (including, but not limited to, services of an executive, management, marketing, sales, research and development, business development, strategic planning, administrative, financial, or consulting nature) to or on behalf of any Person or entity engaged in the same or substantially similar Company Activities in the Territory. Notwithstanding anything in this Agreement to the contrary, during the Term Covenantor may acquire up to two percent of any class of securities of any company engaged in Company Activities in the Territory where such securities are publicly traded on a national securities exchange or in the over-the-counter market so long as Covenantor holds such securities as a passive investment and does not take an active part in the management or direction of such company and does not act as a consultant therefor or in any way render services thereto.

(4) <u>Non-Solicitation</u>.

(A)    Covenantor hereby agrees that, during the Term, except on behalf of Purchaser Group, neither Covenantor nor any of Covenantor's Affiliates will, directly or by assisting others, (1) solicit or attempt to solicit any business from any Person who was a customer, as of the Closing Date or at any time during the one-year period prior to the Closing Date, for purposes of providing products or services that are directly competitive with the Company Activities.

(B)    Covenantor hereby agrees that, during the Term, neither Covenantor nor any of Covenantor's Affiliates will, on behalf of Covenantor or any other Person, directly or by assisting others, recruit or solicit, or attempt to recruit or solicit, any Person who was an employee of the Company on the Closing Date or at any time during the one-year period prior to the Closing Date or is an employee of Purchaser Group during the Term, it being understood that this <u>Section 2.b(4)(B)</u> shall not restrict Covenantor or Covenantor's Affiliates from placing notices of general solicitation of employment.

c.    <u>Reformation</u>.  If a judicial or arbitral determination is made that any provision of this Agreement constitutes an unreasonable or otherwise unenforceable restriction against, such provision shall be rendered void only to the extent that such judicial or arbitral determination finds the provision to be unreasonable or otherwise unenforceable with respect to Covenantor or such Affiliate.  In this regard, Covenantor hereby agrees that any judicial or arbitral authority construing this Agreement shall be empowered to reform any portion of the Territory, any prohibited business activity or any time period in order to make the covenants herein binding and enforceable with respect to Covenantor and any of Covenantor's Affiliates, and to apply the provisions of this Agreement and to enforce against Covenantor and any of Covenantor's Affiliates the remaining portion of the Territory, the remaining business activities, and the remaining time period as such judicial or arbitral authority determines to be reasonable and enforceable.  All of the covenants contained in this Agreement shall be construed as an agreement independent of any other provisions in this Agreement, and the existence of any claim or cause of action Covenantor or any of Covenantor's Affiliates may have against Purchaser (other than in connection with a material breach of this Agreement by Purchaser) shall not constitute a defense to the enforcement by Purchaser to such covenants.  Moreover, notwithstanding the fact that any provision of this Agreement is determined not to be specifically enforceable, Purchaser shall nevertheless be entitled to recover monetary damages as a result of the breach of such provision by Covenantor.

d. <u>Injunctive Relief</u>.  Covenantor hereby agrees that any remedy at law for any breach of the provisions contained in this Agreement shall be inadequate and that Purchaser shall be entitled to injunctive relief in addition to any other remedy Purchaser might have under this Agreement.  Covenantor agrees that any court of competent jurisdiction should immediately enjoin any breach of this Agreement upon the request of Purchaser, and Covenantor specifically releases Purchaser from the requirement of posting bond in connection with temporary or interlocutory injunctive relief, to the extent permitted by Law.

e. <u>Legal Process</u>.  In the event that Covenantor or any of Covenantor's Affiliates is requested or required by applicable Law to disclose any Confidential Information or Trade Secrets during the applicable period specified in <u>Section 2.a</u>, Covenantor will give Purchaser prompt written notice of such request or requirement so that Purchaser may seek an appropriate protective order or other remedy and/or waive compliance with the provisions of this Agreement, and Covenantor will cooperate with Purchaser to obtain such protective order.  In the event that such protective order or other remedy is not obtained or Purchaser waives in writing compliance with the relevant provisions of this Agreement, Covenantor will furnish only that portion of the Confidential Information or Trade Secrets which is legally required to be disclosed.

3. <u>Miscellaneous</u>.

a. <u>Controlling Law</u>.  This Agreement, and all Legal Disputes (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any Legal Disputes based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), shall be governed solely by the internal laws of the State of Delaware, without regard to the conflict-of-law principles thereof. Each Party agrees that it will not bring or support any Legal Dispute of any kind or description, whether in law or in equity, whether in contract or in tort or otherwise in any way relating to this Agreement, in any forum other than the Chosen Courts. The Parties agree that process in any such Legal Dispute may be served on any Party anywhere in the world, whether within or without the jurisdiction of any such court. Without limiting the foregoing, each Party agrees that service of process on such Party as provided in this <u>Section 3.a</u> will be deemed effective service of process on such Party.  In the event of any Legal Disputes, the prevailing party shall be entitled to recover all reasonable attorneys' fees (including appellate fees) expended or incurred in connection therewith.

b. <u>Integration; Waivers</u>.  This Agreement, as the same may from time to time be amended, modified, supplemented or restated in accordance with the terms hereof, constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and constitutes the entire agreement among the Parties with respect to the subject matter hereof.  Any agreement on the part of a party to any extension or waiver of any provision hereof shall be valid only if set forth in an instrument in writing signed on behalf of such party.  A waiver by a party of the performance of any covenant, agreement, obligation, condition, representation or warranty shall not be construed as a waiver of any other covenant, agreement, obligation, condition, representation or warranty.  A waiver by any party of the performance of any act shall not constitute a waiver of the performance of any other act or an identical act required to be performed at a later time.

c. <u>Amendment</u>.  This Agreement may be amended, modified or supplemented at any time only by written agreement of the Parties.

d. <u>Notices</u>.  All notices, requests and other communications to any Party will be in writing (including electronic mail ("e-mail") transmission) and will be given:

5

|  |  |
|---|---|
| To Purchaser: | United Parcel Service of America, Inc.<br>55 Glenlake Parkway<br>Atlanta, GA 30328<br>Attention: HeatherLynn Welde Daly; Elliott Tapp<br>E-mail: hdaly@ups.com; etapp@ups.com |
| with a copy to: | King & Spalding LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309<br>Attention: Rahul Patel; John Hyman<br>Email: rpatel@kslaw.com; jhyman@kslaw.com |
| To Covenantor: | John Labrie<br>█████████<br>Email: john.labrie@mnx.com |
| with a copy to: | Emerson & Elder, P.C.<br>53 West Jackson Blvd, Suite 526<br>Chicago, Illinois 60604<br>Attention: C.J. Compher<br>Email: cj@emersonelder.com |

or such other address or e-mail address as such Party may specify after the date of this Agreement for the purpose by notice to the other Parties. Any such notice, request or other communication will be deemed given or made (a) on the date of delivery, if delivered in person or by e-mail, (b) on the first Business Day following timely delivery to a national overnight courier service or (c) on the fifth Business Day following it being mailed by registered or certified mail. Failure to comply with the provisions of this Section 3.d will not affect the rights or obligations of any Party except to the extent that any such failure materially and adversely prejudices another Party.

  e. <u>Binding Effect; Assignment</u>.  The provisions of this Agreement will be binding upon and will inure to the benefit of the Parties and their respective successors and assigns, and no provision of this Agreement is intended to confer any rights, benefits, remedies or liabilities under this Agreement upon any Person other than the Parties and their respective successors and assigns, unless specifically indicated otherwise herein.  No Party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the other Party, except that Purchaser may (i) assign this Agreement to its lenders for collateral security purposes or (ii) transfer or assign its rights and obligations under this Agreement, in whole or from time to time in part, to any Person.

  f. <u>No Strict Construction</u>.  The language used in this Agreement shall be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction shall be applied against any Person.

  g. <u>Interpretation; Rules of Construction</u>.  The words "include", "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation".  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  Whenever the context so requires, the singular number shall include the plural and the plural shall include the singular, and the gender of any pronoun shall include the other gender.

  h. <u>Counterparts; Electronic Delivery</u>.  This Agreement may be signed in any number of counterparts, each of which will be an original, with the same effect as if such signatures were upon the same instrument. This Agreement will become effective when each Party will have received a counterpart of this Agreement signed by all of the other Parties. Until and unless each Party has received a counterpart of this Agreement signed by all of the other Parties, this Agreement will have no effect and no Party will have any right or obligation under this Agreement (whether by virtue of any other oral or written agreement or other communication). The exchange of a fully executed Agreement by electronic transmission in .PDF format will be sufficient to bind the Parties to the terms and conditions of this Agreement.

  i. <u>Waiver of Jury Trial</u>.  EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT.

  j. <u>Effectiveness; Termination</u>.  This Agreement shall be conditioned upon the Closing occurring pursuant to the Purchase Agreement and until such event, none of the provisions of this Agreement shall have any force or effect, nor may any provision be enforced by or against any Person. Concurrently with the occurrence of the Closing, this Agreement shall automatically become effective, without any further action by the Parties or any other Person. If the Purchase Agreement is terminated in accordance with its terms prior to the Closing, then this Agreement shall, automatically and without the requirement of the taking of action by any Party, be void *ab initio* and shall not have any force or effect.

**[Signature Pages Follow]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**PURCHASER:**

United Parcel Service of America, Inc.

By: _____
Name: James Eshleman
Title: Authorized Signatory

[Signature Page to Restrictive Covenant Agreement]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written.

**COVENANTOR:**

**John Labrie**

By: _____
   *DocuSigned by: [signature] John Labrie*

Name: _____

Title: _____President & CEO_____

[Signature Page to Restrictive Covenant Agreement]