# EXHIBIT B

September 26, 2023

John Labrie

▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

Re: Retention Bonus Agreement

Dear John:

As you know, pursuant to that certain Stock Purchase Agreement, to be entered into on or about the date hereof (the "Purchase Agreement"), by and among MNX Global Parent Holdings, LLC, a Delaware limited liability company ("Seller"), MNX Global Intermediate Holdings, Inc., a Delaware corporation (the "Company"), and United Parcel Service of America, Inc., a Delaware corporation (the "Purchaser"), Seller will sell, and Purchaser will purchase, all of the issued and outstanding shares of common stock of the Company (the "Transaction"). As someone whose duties and responsibilities are important to the long-term success of the Company, we are offering you a special retention bonus pursuant to the terms set forth in this letter (this "Agreement") to further incentivize you to continue your employment with the Company. The effectiveness of this Agreement is subject to the consummation of the Transaction, and if the Purchase Agreement is terminated or the Transaction does not otherwise occur for any reason, this Agreement will automatically terminate and have no force or effect. Capitalized terms not defined in this Agreement have the meanings set forth in the Purchase Agreement.

Subject to your continued employment with the Company through the Retention Bonus Period and the Company's achievement of the performance goals specified in this Agreement, you will be eligible for a cash bonus in an amount equal to ▮▮▮▮▮▮▮▮ (the "Retention Bonus"), as follows:

(i) Service Retention Bonus. You will be eligible to receive fifty percent (50%) of your Retention Bonus (the "Service Retention Bonus") in two installments, subject to your continued employment by the Company or one of its affiliates through the Retention Bonus Period, as follows:

a. If you remain employed by the Company or one of its affiliates during the period beginning on the date of the Closing of the Transaction and ending on December 31, 2024 (the "First Retention Period"), you will receive a cash bonus equal to ▮▮▮▮▮▮▮▮, less required tax withholdings; and

b. If you remain employed by the Company or one of its affiliates during the period beginning on January 1, 2025 and ending on December 31, 2025 (the "Second Retention Period"), you will receive a cash bonus equal to ▮▮▮▮▮▮▮▮ less required tax withholdings.

(ii) Performance Retention Bonus. You will be eligible to receive fifty percent (50%) of your Retention Bonus (the "Performance Retention Bonus") subject to the Company's achievement of certain performance goals during each Retention Bonus

47067774

Period, as follows:

a. If the Company meets the target for Gross Profits and Revenue set forth in the chart below (the "Gross Profit Target" and "Revenue Target," respectively) for the First Retention Period, you will be eligible to receive a cash bonus equal to ████████ based on the Company's achievement of the Gross Profit Target and $████████ based on the Company's achievement of the Revenue Target, respectively, less applicable tax withholdings.

b. If the Company meets the Gross Profits Target and Revenue Target for the Second Retention Period, you will be eligible to receive a cash bonus equal to ████████ based on the Company's achievement of the Gross Profit Target and ████████ based on the Company's achievement of the Revenue Target, respectively, less applicable tax withholdings.

| Performance Target | Performance Target for First Retention Period | Performance Target for Second Retention Period |
|---|---|---|
| Gross Profits Target | ████ | ████ |
| Revenue Target | ████ | ████ |

The Company shall determine in its sole discretion whether the Gross Profits Target or Revenue Target are achieved for the First Retention Period or Second Retention Period, as applicable, based on Company's actual reporting for such period. If the Gross Profits Target or Revenue Target is not achieved for any Retention Bonus Period, then such portion of the Performance Retention Bonus shall be zero.

Each of the Service Retention Bonus and the Performance Retention Bonus is referred to individually herein as a "Retention Bonus" and, collectively, as the "Retention Bonuses". The Purchaser will cause the Company to pay each Retention Bonus in a lump sum as soon as practicable following the end of First Retention Period and the Second Retention Period, as applicable, but no later than March 15 of the calendar year which follows the end of the First Retention Period or Second Retention Period, as applicable (the "Payment Date"). Except as otherwise set forth in this Agreement, you must be employed by the Company or one of its affiliates through the end of each Retention Bonus Period to be eligible for the applicable Retention Bonus for such period. You understand and agree that any amounts constituting the Retention Bonuses will not be included in your compensation for purposes of calculating your benefits under any applicable incentive compensation or employee benefit program, including the Company's annual and long-term incentive compensation plans and retirement plan, unless specifically provided otherwise by the terms of the governing instruments for such program or plan.

If, at any time during any Retention Bonus Period, your employment is terminated by the Company without Cause (as defined below), any unpaid Retention Bonus(es) (including, for purposes of clarity, any Retention Bonus payable during the Second Retention Period, even if your

2

employment is terminated during the First Retention Period) will be paid to you in a lump sum within 60 days following your date of termination, subject to your executing (and not revoking) a general release of claims in favor of the Company and its affiliates in the form provided by the Company. However, if such 60-day period begins in one calendar year and ends in a second calendar year, the Retention Bonus(es) will be paid in the second calendar year. If your employment is terminated for any reason other than by the Company without Cause during a Retention Bonus Period (including your resignation for any reason other than death or disability), no unpaid Retention Bonus will be paid to you. If your employment is terminated by reason of your death or disability, you (or, in the case of your death, your beneficiaries or estate) will receive a pro-rated Retention Bonus based on the number of days you were employed during the Retention Bonus Period.

For purposes of this Agreement, "Cause" means (i) "Cause" as defined in any written employment agreement, incentive compensation plan, retirement or severance plan or program to which you are eligible to participate, or any other agreement between you and the Company or any of its affiliates; or (ii) if no such employment agreement exists, or such agreement does not define "Cause", (A) embezzlement, theft or misappropriation by you of any property of the Company or any of its affiliates; (B) a material failure or refusal by you to perform any lawful directive of the Company officer to whom you then report (referred to herein as the "Officer") or the duties of your employment with the Company or any of its affiliates; (C) any act by you constituting a felony or otherwise involving theft, fraud, dishonesty, misrepresentation or moral turpitude; (D) your commission of, conviction of, or plea of nolo contendere (or similar plea) to, any criminal offense; (E) willful misconduct in the performance of your duties as an employee, officer or director of the Company or any of its affiliates; (F) any act or omission to act by you intended to harm or damage the business, property, operations, financial condition or reputation of the Company or any of its affiliates, or your engagement in any activity or behavior that is or could be harmful to the property, business, goodwill, or reputation of the Company or any of its affiliates; (G) your breach of your fiduciary obligations, or disloyalty, to the Company or any of its affiliates; (H) a material breach by you of any agreement between you and the Company or any of its affiliates, including any breach of any restrictive covenants in effect during your employment and applicable to you; (I) a material violation by you of any written policies or codes of conduct (including written policies related to discrimination, harassment, performance of illegal or unethical activities, and ethical misconduct) of the Company or any of its affiliates; or (J) materially unsatisfactory performance of your employment duties. The existence or non-existence of Cause will be determined by the Officer.

You understand and agree that the terms and conditions of your Retention Bonuses are reflected entirely in this Agreement, and this Agreement supersedes any verbal discussions you may have had about this subject, and that it can be modified only in a writing signed by you and the Company.

This Agreement will not confer upon you any right to employment or continued employment with the Company or any of its affiliates, nor will this Agreement interfere in any way with the right of the Company or any of its affiliates to terminate your employment at any time. To the extent not preempted by the laws of the United States, the laws of the State of Delaware will be the controlling law in all matters relating to this Agreement without giving effect to

principles of conflicts of laws.  This Agreement may be executed in counterparts, each of which will be considered an original, but all of which together will constitute one agreement.

Although the Company does not guarantee any particular tax treatment relating to the Retention Bonuses, it is intended that the Retention Bonuses be exempt from, or comply with, Section 409A of the Internal Revenue Code of 1986, as amended, and the regulations and guidance promulgated thereunder (collectively, "Section 409A").  Accordingly, to the maximum extent permitted, this Agreement shall be interpreted consistent with this intent.  In no event whatsoever will the Company, Buyer or their respective affiliates be liable for any additional tax, interest or penalty that may be imposed on you by Section 409A or damages for failing to comply with Section 409A.

As a condition of being eligible for the Retention Bonuses, you must execute the Employee Proprietary Information and Non-Solicitation Agreement attached hereto as Exhibit A and abide by the terms therein.

You agree not to disclose any information regarding the existence or substance of this Agreement, except to your immediate family, tax advisor, and an attorney with whom you may choose to consult regarding your consideration of this Agreement, except as compelled to do so by process of law.

If you are in agreement with the foregoing, please sign this Agreement in the space provided below and sign the Employee Proprietary Information and Non-Solicitation Agreement and return them to the Company, no later than September 27, 2023.

Thank you in advance for your continued contributions to the Company.

*[Signature Pages Follow]*

UNITED PARCEL SERVICE OF AMERICA, INC.

By: *James Eshleman* (DocuSigned, EA336802FCF549E...)

    Name: James Eshleman
    Title: Authorized Signatory

DocuSign Envelope ID: ACCFA626-2404-4B5B-096F-3F995C5DA8E8

ACKNOWLEDGED AND AGREED:

_____
B923661ACFF94A8...

John Labrie

9/27/2023

_____
Date

## Exhibit A

**Employee Proprietary Information and Non-Solicitation Agreement**

[To be attached]

# Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement
## (Non-California Employees)

| Last Name: | Labrie | First Name: | John |
|---|---|---|---|
| Region/District: | | Employee ID Number: | |

The term "Company" when used in this Agreement includes United Parcel Service, Inc., and/or any of its affiliates, divisions, and subsidiaries.

In consideration of my employment or continued employment with the Company, my being given authorization to access and use Confidential Information as defined below, my being given the opportunity to develop customer relationships, the compensation now and in the future being paid to me, any increases in pay, bonuses, any promotions that I receive, and/or any training by the Company, Employee ("I, me, my") agrees to the following:

(A)  **Confidentiality**

  (1)  Definitions.  The following definitions shall apply to this Agreement:

  (i)  "**Trade Secrets**" means all tangible or intangible information regarding Company or its activities that meets the definition of "trade secrets" under applicable federal, state or local law.

  (ii)  "**Confidential Information**" means all tangible or intangible information, whether written, oral or in any electronic, visual or other medium, that is subject to reasonable efforts by the Company to maintain its confidentiality and that (a) relates to Company, Company's activities, Company's business or Company's suppliers or customers; (b) is furnished or made available by Company to me, or (c) I become aware of as a consequence of or through my relationship to Company.  By way of example, Confidential Information includes, but is not limited to, information relating to Company's products services or business methods; research and development efforts; computer programs and related source and object codes; suppliers and customers; product manufacture and installation; product or service cost or pricing; personnel allocation or organizational structure; marketing strategies or initiatives; business development expansion or contraction plans; and legal or financial affairs.  Although certain information may be generally known in the relevant industry, the fact that Company uses such information may not be so known and in such instance the information would compromise Confidential Information.  Furthermore, the fact that various fragments of information or data may be generally known in the relevant industry does not mean that the manner in which Company combines them, and the results obtained thereby, are so known and in such instance such information or data would also comprise Confidential Information.  Confidential Information may also include information disclosed to

me by third parties for use by or for the benefit of Company. "Confidential Information" shall not include information that has become generally available to the public by the act of one who has the right to disclose such information without violating any legal right of Company.

(2)     I expressly acknowledge and agree that Company's Trade Secrets and Confidential Information have actual or potential economic value from not being generally known or readily ascertainable and are the subject of reasonable efforts by Company to maintain their secrecy.

I shall not, without the express prior written consent of Company, directly or indirectly, disclose to any person or entity or, except as necessary to perform my duties as an employee of Company, make use of for myself or any other person or entity, (i) any Confidential Information during the term of this Agreement and for a period of two (2) years immediately following the termination of my employment with Company; and (ii) any Trade Secrets during the term of this Agreement and for so long thereafter as any particular Trade Secret retains its status as a trade secret under applicable federal, state or local law.  Nothing in this Agreement shall limit any definitions of trade secrets or confidential information, or any rights, protections or remedies relating thereto that Company may have, pursuant to applicable federal, state or local law.  In the event a disclosure is required by any law or government order, I shall provide Company with prior written notice of such requirement and an opportunity to contest such disclosure.  Federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

(3)     All documents and other tangible objects containing or representing Trade Secrets and/or Confidential Information that have been disclosed or made available to me, and all permitted copies thereof which are in my possession, shall be and remain the property of Company and shall be promptly returned to Company or, if stored on an electronic media, shall be deleted, upon the earlier of (i) the termination of my employment with Company, or (ii) the Company's request.  I agree not to retain or provide to anyone else other than Company any copies, summaries, abstracts, excerpts portions or other representations of such documents or other tangible objects.

(4)     As set forth in the Information Security and Privacy Manual, the Company reserves the right to monitor the use of all information and information technology assets and the communications of all the Company employees.

(5)     Nothing in this Agreement shall limit any definition, protection or remedy that is otherwise available to Company under applicable law.

(B)    **Intellectual Property**

(1)     I hereby assign and transfer and agree to assign and transfer to Company my entire right, title and interest in and to any and all Intellectual Property authored, made, or conceived of by me, alone or in conjunction with others, during the term of my employment and for one (1) year thereafter that relates to the business or proposed activities of Company and that results from work performed by me for Company or from any use of Company resources.  The Intellectual Property that I agree to assign and transfer to Company includes, but is not limited to, any and all worldwide rights in any and all media now known or later developed; all rights of action against third parties I had, have, or may have, now existing and in the future in and to the Intellectual Property; the right to secure statutory copyrights and renewals, reissues, and extensions of such copyrights and the right to prepare derivative works or adaptations therefrom; the right to reproduce the Intellectual Property; the right to distribute copies of the Intellectual Property; the right to perform the Intellectual Property, including, without limitation, digital transmissions of the Intellectual Property through an interactive or subscription service; the right to display the Intellectual Property; the right to make, use, offer for sale, sell and import the Intellectual Property; the right to apply for and obtain patents (including continuation, continuation-in-part, divisional, reissued and reexamined patents) in any country in the world; and the right to any and all trademark, service mark, and/or trade dress rights in and/or pertaining to the Intellectual Property, along with the goodwill associated therewith, which interests and rights shall be held and enjoyed by Company to the full end of the term for which such copyrights or any renewal or extension thereof is or may be granted, and to the full end of the term for any patents (including all continuation, continuation-in-part, divisional, reissued and reexamined patents) that is or may be granted.  "**Intellectual Property**" means works of authorship, inventions, know-how, trade secrets, trademarks, trade dress, confidential information, discoveries, compositions of matter, business methods, formulas, patterns, improvements, techniques, methods of manufacture and/or installation, products, devices, processes, concepts, ideas, designs, sketches, schematics, drawings, configurations, schedules, reports, research, studies, findings, business and market plans, computer programs and related source and object codes, literary works, pictorial works, graphic works, visual works, aural works, ornamental designs, or any combinations thereof.  I shall promptly disclose in writing to Company all Intellectual Property and, upon Company's request, promptly execute any document confirming the assignment and transfer of the Intellectual Property to Company.  I shall not be entitled to use the Intellectual Property for the benefit of myself or anyone, except Company, without prior written consent of Company.

Page 3 of 10

Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement
(Non-California Employees)
WORKAMER\39215009.v4

(2)     Without limiting the scope of the provisions of Paragraph (B)(1) above, I agree that all original works of authorship, including software, that (solely or jointly with others) are made by me within the scope of my employment and that may be protected by copyright law are "works made for hire," as that term is defined in the United States Copyright Act, 17 U.S.C. § 101.  I further agree that, to the extent any such work is determined not to be a "work made for hire," I will disclose and assign and hereby do assign to the Company as its exclusive property any such original work of authorship.

(3)     I agree to provide all assistance reasonably requested by Company in the establishment, preservation and enforcement of its rights in the Intellectual Property, such assistance to be provided at Company's expense but without any additional compensation to me.  I hereby warrant and covenant that I have not executed and will not execute any agreement in conflict herewith.  I further agree to make and maintain for Company adequate and current written records as required by Company of all such Intellectual Property.

(4)     The laws of some states prohibit the assignment of certain invention rights, and this Agreement shall be construed so that it complies with all such applicable laws.  To that end, to the extent applicable state law requires it, you are notified as follows:

> **This Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on your own time, unless (a) the invention relates at the time of conception or reduction to practice (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work that you performed for the Company.**

(5)     If the state law that applies provides greater invention rights to you than are described in the above notice, those greater rights will apply to you. I understand and acknowledge that nothing in this Agreement is intended to expand the scope of protection regarding invention rights that is provided to me by applicable law.

(C)     **Non-Solicitation of Customers and Employees**

In order to protect the Company's Confidential Information and Trade Secrets as those terms are defined in Section A(1)(i) and (ii), the goodwill of Company and Company's legitimate business interests in its customers and employees, I agree as follows:

(1)     During my employment with Company, and for a period of two (2) years following the termination of my employment with Company, I will not, without the prior written permission of Company, directly or indirectly, for myself or on behalf of any other person or entity, solicit or attempt to solicit any Customer of Company for purposes of providing

Page 4 of 10

Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement
(Non-California Employees)
WORKAMER\39215009.v4

product or delivery services marketed or provided by me on behalf of Company to the Customer during the twelve (12) months immediately preceding the termination of my employment ("**Company Activities**").[1]  For purposes of this covenant, I agree that the term "**Customer**" means any individual or entity to whom Company has provided Company Activities and with whom I had, alone or in conjunction with others, Material Contact during the twelve (12) months prior to the termination of my employment for any reason and regardless of whether that termination is initiated by me or the Company.  For purposes of this covenant, I further agree that I had "**Material Contact**" with a Customer if (i) I had business dealings with Customer on Company's behalf; or (ii) I was responsible for supervising or coordinating dealings between Company and Customer; or (iii) I obtained Trade Secrets or Confidential Information about Customer as a result of my employment with Company.

**Please check the appropriate box and initial below:**

☐ *I acknowledge that I have Material Contact with Customers of Company.  Therefore, I agree to comply with and be bound by the non-solicitation provision set forth in Section C(1) of this Agreement.*

☐ *I do not have Material Contact with Customers of the Company.  Therefore I am not currently subject to the non-solicitation provision set forth in Section C of the Agreement.  However, I further acknowledge that if I have Material Contact with Customers of the Company in the future, I agree to comply with and be bound by the non-solicitation provision set forth in Section C of the Agreement.*

(2)       During my employment with Company, and for a period of one (1) year following the termination of my employment with Company, I will not, without the prior written permission of Company, directly or indirectly, for myself or on behalf of any other person or entity, solicit or induce any Protected Employee to terminate his or her employment relationship with Company or to enter into employment with any other person or entity that competes directly or indirectly with Company.  For purposes of this covenant, I agree that the term "**Protected Employee**" means any employee who (i) was employed by Company at any time during the twelve (12) months immediately preceding my last day of employment with Company and (ii) has or had access to Confidential Information or Trade Secrets during such employment with Company, it being understood that this Paragraph C shall not restrict placing notices of general solicitation of employment.

(D)       **Non-Compete**

---

[1] **K&S Note to Draft**: Employee's scope of duties may expand during course of employment with UPS, and this agreement needs to cover what the employee did during employment with UPS, not just what Midnight does as of today.

 (1) Definitions. The following definitions shall apply to this Section D of the Agreement:

  (i) "**Restricted Period**" means during my employment with the Company and for a period of one (1) year after my employment ends for any reason.

  (ii) "**Restricted Competitors**" means the companies and/or organizations, and any of their affiliates and related entities, listed in Schedule A attached hereto.

 (2) During the Restricted Period, I will not, without the prior written consent of the Company, (a) work for a Restricted Competitor; (b) provide advice or consulting services to a Restricted Competitor; or (c) otherwise provide services to a Restricted Competitor that are similar to those services that I provided to the Company and that are competitive with the transportation, delivery, logistics, same-day delivery and last mile logistics services provided by the Company during my employment. I understand and agree that this non-compete provision is limited to the geographic area where the Company did business during my employment.

(E) **Reasonableness and Relief**

I agree that the covenants contained herein are a necessary means to protect Company's interests in its Trade Secrets, Confidential Information, Intellectual Property, goodwill and its relationships with customers and employees and that they will not unreasonably interfere with my ability to earn a living should my employment be terminated. I agree that any breach by me of any of these covenants will cause irreparable harm and injury to Company and will leave Company with no adequate remedy at law. I agree that such a breach will entitle Company to (i) injunctive relief in any court of competent jurisdiction without the necessity of posting a bond; (ii) the recovery of all attorneys' fees and costs resulting from my breach; and (iii) any monetary damages resulting from my breach.

(F) **Miscellaneous**

I acknowledge that this Agreement does not create a contract of employment for a definite period of time, does not restrict in any way my right to terminate my employment with the Company or the Company's right to terminate my employment and, if my employment is at-will, does not alter my status as an at-will employee. I further agree and understand that the terms and conditions of my employment, including job duties and compensation, can be changed by the Company at any time, and that such changes, even to my detriment, will not prevent the Company from enforcing any of the terms of the agreement. I have set forth in attached Schedule B, which is incorporated, herein, a list and written description of all inventions, whether or not patented, owned by me prior to my employment by Company. These inventions are to be excluded from this Agreement. In addition, I represent and warrant that, except as specifically itemized on Schedule B, I have no agreements with, or obligations to, other persons or entities that conflict with this Agreement.

Page 6 of 10

Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement
(Non-California Employees)
WORKAMER\39215009.v4

Finally, I agree not to disclose or use in my work with the Company any trade secrets or confidential information of others, including, or any inventions or innovations of my own that are not included within the scope of this Agreement.

No provision of this Agreement will be construed against, or interpreted to the disadvantage of, any party hereto by any court or any governmental or judicial authority by reason of such party having, or being deemed to have, structured or drafted such provision. This Agreement may not be modified or terminated, in whole or part, except in writing signed by an authorized representative of the Company. In the event that any court of competent jurisdiction concludes that any provision (or portion of any provision) of this Agreement is unenforceable, the parties agree that the court should first narrow or otherwise interpret the provision to the extent necessary such that the intent of the Company and the Employee in agreeing to the provisions of this Agreement will not be impaired and the provision in question shall be enforceable to the fullest extent of the applicable laws. In the event that the court concludes that it is unable to narrow or otherwise interpret the provision so that it is not invalid, illegal or otherwise unenforceable, such provision shall be fully severable and the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. No delay or failure by Company in exercising any of its rights, remedies, powers, or privileges hereunder, at law or in equity, and no course of dealing between Company and the or any other person shall be deemed to be a waiver by Company of any such rights, remedies, powers, or privileges, even if such delay or failure is continuous or repeated, nor shall any single or partial exercise of any right, remedy, power, or privilege preclude any other or further exercise thereof by Company or the exercise of any other right, remedy, power, or privilege by Company. This Agreement shall remain in effect and shall bind my heirs, assigns, successors, and legal representatives.

Page 7 of 10

Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement
(Non-California Employees)
WORKAMER\39215009.v4

**This Agreement and Schedules A and B attached hereto contain the entire Agreement of the parties concerning the subject matter hereof and supersede and replace any existing agreements between Company and the relating generally to the same subject matter.**

### TYPE OR PRINT IN INK

Full Name  John Labrie            Region/District Code _____

Employee ID Number _____

**If you have conflicting agreements or have prior inventions, please check the appropriate box(es) and complete the attached Schedule "B."**

☒ I have no conflicting agreements or prior inventions.

☐ I have conflicting agreements and/or prior inventions.

Employee Name (Print): _____

Employee Name (Signature): *[DocuSigned by: /s/ John Labrie, B923661ACFF94A8...]*

Employee Title: _____

Date: _____

### Electronic Version Only

I agree that my electronic signature is the legally binding equivalent to my handwritten signature. By my electronic signature, I acknowledge that I have carefully reviewed this Agreement and understand its contents. I further agree to abide by the terms of this Agreement.

☒ I Agree

Date: 9/27/2023

*[DocuSigned by: /s/ John Labrie, B923661ACFF94A8...]*

Page 8 of 10

Employee Proprietary Information, Non-Solicitation and Non-Competition Agreement (Non-California Employees)
WORKAMER\39215009.v4

## SCHEDULE "A"

## RESTRICTED COMPETITORS

FedEx

DHL

Amazon

Royal Mail/General Logistics Systems

WalMart

Target

XPO

Uber

Deliverr

DoorDash

GrubHub

Point Pickup

## SCHEDULE "B"

**TYPE OR PRINT IN INK**

Full Name: _John Labrie_____    Region/District Code: _____

Employee ID Number: _____

The following are the only agreements to which I am a party that may be in conflict with the obligations undertaken above:

1. _____

2. _____

3. _____

4. _____

5. _____

List of Prior Inventions

1. _____

2. _____

3. _____

4. _____

5. _____